NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEA NORTH AMERICA INS. CO. : <br> : <br> Plaintiff, : <br> : <br> V. : <br> : <br> SALEM MASONRY, CO., INC., : <br> PADOVANO FRANKEL VOUGA : <br> AGENCY, AVRIN SLATKIN, COVENANT : <br> BROKER PROGRAM, INC., NUNO : <br> ALEXANDRE, GRANITE STATE : <br> INSURANCE CO. : <br> : <br> : <br> Defendants. : | Civil Action No. 03-cv-2927 (PGS) <br><br> OPINION |

**SHERIDAN, U.S.D.J.**

This matter comes before this Court pursuant to Fed. Civ. P. 60(b) for relief from the Court's previous orders. Defendant, Granite State Insurance Co. ("Granite"), moves to vacate the prior rulings of Judge Martini due to a change of law.

I.

Salem Masonry Co., Inc. ("Salem"), employed Nuno Alexandre ("Alexandre"). Salem contracted with Joseph Percario, Inc. ("Percario"), a general contractor, to perform masonry/concrete work at a worksite in Elizabeth, New Jersey. In order to perfect its contract with Percario, Salem was required to produce evidence that it had workers compensation insurance. To that end, Salem contracted with Alea North America Insurance Company ("Alea") to provide workers' compensation

insurance. Granite provided workers' compensation insurance for Percario. On November 18, 2002, Alexandre fell down an elevator shaft which was about 5 - 6 stories high. Alexandre incurred catastrophic injuries requiring doctors to induce a coma for a period of time. On November 18, 2002, a claim for workers' compensation benefits on behalf of Alexandre was made to Alea. Alea commenced payment of benefits and, simultaneously, authorized an internal investigation of Salem's operations. The investigation revealed that Alexandre was working at heights more than fifteen feet above ground level. As it turns out, the application submitted on behalf of Salem indicated that employees of Salem did not perform any work at heights more than fifteen feet above ground level.

Realizing Alexandre fell from a far greater height than 15 feet, Alea brought this action to rescind its policy due to fraud and to declare the general contractor's carrier, Granite, responsible to pay worker compensation benefits to Alexandre, as well as reimbursing Alea for benefits paid.

Judge Martini entered several opinions prior to this case being transferred to this Court. Most noteworthy was the April 29, 2005 decision to grant summary judgement on Alea's claim of equitable fraud thereby rescinding the workers' compensation policy issued to Salem.[1] Thereafter, the litigation grinded along with various claims being asserted against the brokers, Salem and the claim by Alea against Granite for reimbursement of monies paid to Alexandre.

On July 17, 2006, the unpredictable occurred. At that time, the Superior Court of New Jersey Appellate Division issued a precedential decision that held, in broad terms, that a workers' compensation carrier could not void a policy where the application by the employer contained fraudulent statements. *American Millennium Insurance v. Berganza*, 386 N.J. Super. 405 (App. Div.

---

[1] Despite this ruling, compensation payments to Alexandre continued because Granite was required to step up pursuant to statute. N.J.S.A. 34:15-79.

2006). The *American Millennium* decision gives rise to the present motion by Granite to set aside Judge Martini's decision. Granite argues that *American Millennium* is squarely on point with the case at hand, and this Court should defer to the decisions of law of the State of New Jersey.

In order to decide the motion, a close look at the *American Millennium* case is required. In *American Millennium*, Stegers Brothers Drywall Company, Inc. ("Stegers") subcontracted drywall work to Mainor Berganza ("Berganza"), who employed Jose Arias. *Id.* at 488. On January 18, 2003, Berganza went to City Line Insurance, Inc. ("City Line"), a producer of business for Morstan General Agency of New Jersey, Inc. ("Morstan"), a wholesale broker that places workers' compensation policies with American Millennium. *Id.* An application and questionnaire was filled out requesting a policy with an effective date of January 19, 2003. *Id.* On that same date, City Line faxed a workers' compensation policy certificate to Stegers evidencing that Berganza was insured, and the application and questionnaire were forwarded to Morstan. *Id.* On January 20, 2003, Morstan completed the paperwork and forwarded same to American Millennium. *Id.* The following day, Arias was injured in a work related incident when he fell off a ladder at Stegers' worksite. *Id.* Berganza reported the accident to City Line on January 24, 2003. *Id.* On January 29 or 30, 2003, American Millennium issued a workers' compensation policy to Berganza with a retroactive effective date of January 19, 2003. *Id.* On February 4, 2003, City Line faxed to Morstan a "First Report of injury" which was subsequently sent by City Line directly to American Millennium on February 20, 2003. *Id.* at 489. At that point, American Millennium declined coverage and filed suit for rescission of the policy. *Id.*

Following a bench trial which found that fraud had been committed on the application and questionnaire, the court permitted rescission as to Berganza, denied rescission as to Arias, ordered

that Stegers' workers' compensation carrier be responsible for half of any compensation awarded to Arias, and allowed both carriers to seek reimbursement from Berganza. *Id.* at 487. Appeals were thereafter taken by multiple parties. *Id.*

Ultimately, the New Jersey Appellate Division held that American Millennium was fully liable to the injured employee. *Id.* at 493. In reaching this conclusion, the court held that "[t]he contract is clear, and our statute is clear." *Id.* at 490. The court specifically cited to *N.J.S.A.* 34:15-83 and -84 which creates a direct relationship between the insurer and the insured's employees. The workers compensation policies must "'be construed to provide' that such policies are 'made for the benefit of the several employees of the insured employer.'" *Id.* at 489, 492. The court believed this holding was "driven home" by the language of the policy which states that the insurance company is "directly and primarily liable" to injured employees, binds the insurance company to adverse decisions against the employer in compensation actions, and that "as between an injured worker and us [insurer], we have notice of the injury when you [the employer] have notice." *Id.* at 493.

Since the statute creates a contractual relationship between the insurer and the employee, the court found that a "policy issued upon the untrue statements made by the employer is no defense." *American Millennium* 386 N.J. Super. at 490-91 (quoting *Aiors v. Sardo*, 223 A.D. 201 *aff'd* 164 N.E. 48 (N.Y. 1928)). *See, Bates v. Nelson*, 38 N.W. 2d 631, 635 (Ia. 1949). Legal commentators agree with this proposition also. Professor Larson concurs that an insurer may only escape liability in rare circumstances. That is, in the situation where the employer attempts to find insurance for an employee's injuries that already occurred without disclosing the work related accident. 4 Larsons Workmen's Compensation Law §92.22 - 92.24 (Bender 1986). In short, the *American Millennium* court found several reasons to reject recision, even if untrue statements were made by the employer

4

or its brokers. They are (a) the statute imposes a relationship between insured and employee; (b) the employee did not commit any fraud; and (c) the statute allows the employee to directly sue the insured for coverage. *American Millennium*, 386 N.J. Super. at 493.

In the case at bar, Alea argues that the *American Millennium* case is distinguishable and that this court is not bound to apply a decision of the Appellate Division of the Superior Court. This court rejects both arguments. First, *American Millennium* is closely analogous to this case. As in *American Millennium*, the accident occurred after the insurance certificate was forwarded, Alexandre (employee) did not commit any fraud, the statutes at issue are the same, and neither party argues that the terms of the policy are different.

Alea's second argument is that this Court is not bound to apply the Appellate Division's decision especially where the Supreme Court has not ruled. More particularly, Alea's brief states that the "Court is not bound by any decision of the New Jersey Appellate Division . . . [and] it is unclear that the New Jersey Supreme Court would adopt the Appellate Division's holding in *American Millennium*." Alea's Reply Brief at Pg. 7. Although this assertion is true in the abstract, there are strong policy reasons to defer to the judgement of the Appellate Division in this instance.

"When ascertaining matters of state law, the decisions of the state's highest court constitute the authoritative source. If the [state] Supreme Court has not yet passed on the question before us, we must consider the pronouncements of the lower state courts. Such decisions should be given proper regard, but not conclusive effect." *Connecticut Mut. Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir. 1983) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3d Cir.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Adams v. Cuyler*, 592 F.2d 720, 725-26

(3d Cir.1979), aff'd, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981)). While the federal courts are not bound by the decisions of lower state courts, "[a] decision of 'an intermediate appellate state court...is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 516 (3d Cir. 1997) (citing *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 435 n. 11 (3d Cir.1992)). Absent clear guidance from the New Jersey Supreme Court, federal courts must predict how the New Jersey Supreme Court would decide the issues "and will, when persuasive, rely on decisions of the intermediate appellate court, unless we are convinced that the supreme court would decide otherwise." *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 113 (3d Cir. 1992) (citing *West v. American Telephone & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *McKenna*, 622 F.2d at 662).

In support of its contention, Alea relies upon the prior findings, holdings and opinions of the District Court in this case and another opinion by the District Court in *In re Tri-State Armored Svc., Inc.*, 332 B.R. 690 (D.N.J. 2005), which distinguished *First American Title Ins. Co. v. Lawson*, 177 N.J. 125 (2003), one of two cases that Granite relied heavily upon prior to *American Millennium*.

Since "a federal court's prediction of state law, until and unless overruled by the state supreme court, tends to 'verge on the lawmaking function' of the highest state court, it is critical that the federal court do all within its power to view the problem before it as a state court would, and not through the eyes of a court steeped in federal law. See Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va.L.Rev. 1671, 1681-82 (1992). Accordingly, it must be recognized that a decision of a lower state court on a point of state law is generally more predictive of what the state supreme court would hold than is a conflicting opinion

of a federal court on the same point." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046-47 (3d Cir. 1993).

The language of cases out of this Circuit make clear that substantial deference is to be afforded decisions of an intermediate appellate court where the state's supreme court has not yet ruled on a particular issue. Some courts have deemed such decisions "evidence of state law," *Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237, 242 (3d Cir. 1993), or even "presumptive evidence" of state law. *National Surety Corp. v. Midland Bank*, 551 F.2d 21. 30 (3d Cir. 1977). Others have required "convincing," *Fleck*, 981 F.2d at 113, or "persuasive data that the highest court of the state would decide otherwise.'" *Pittston*, 124 F.3d at 516. In this instance, Judge Martini did not have the benefit of the *American Millennium* decision. The issue which inures is whether the opinion in *American Millennium* is sufficient to reopen the district court's prior decisions.

"The general purpose of Rule 60(b)...is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir.1978) (quoted in *Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir.), cert. denied, 537 U.S. 947 (2002)).

A motion filed pursuant to Rule 60(b) is "addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir.1981). Rule 60(b), however, "does not confer upon the district courts a 'standardless residual of discretionary power to set aside judgments.'" *Moolenaar v. Government of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir.1987). Rather, relief under Rule 60(b) is available only under such circumstances that the "'overriding interest in the finality and repose of judgments may properly be overcome.'" *Harris v. Martin*, 834 F.2d 361, 364 (3d

Cir.1987) (quoting *Martinez-McBean v. Government of the Virgin Islands*, 562 F.2d 908, 913 (3d Cir.1977)). "The remedy provided by Rule 60(b) is 'extraordinary, and [only] special circumstances may justify granting relief under it.'" *Moolenaar*, 822 F.2d at 1346 (citations omitted).

Granite has appealed to the discretionary powers of the Court under Rule 60(b)(6), to modify the previous orders rescinding the policy pursuant to new case law out of the New Jersey Superior Court, Appellate Division. It is argued that *American Millennium* is directly on point and constitutes a legitimate and valid "reason justifying relief from the operation of the judgment." Rule 60(b)(6). The Court agrees. The rationale set forth by Judge Coburn, an experience and respected jurist, in *American Millennium* is sound, and most likely captures the sentiments of New Jersey's highest court if it were to hear the case. Moreover, workers' compensation laws were enacted at the turn of the twentieth century to protect workers. In exchange for limited benefits without showing negligence, workers forfeited their right to sue employers. Those laws have functioned well for both employers and employees over the last century. If the federal court were to adopt a different position than the state courts on any point of worker compensation law, the rudimentary principles underpinning workers compensation law may unravel, at least as far as it applies to the construction industry. This is not a prudent course. Hence, upsetting the "repose" of this litigation by vacating Judge Martini's decision is relatively minor compared to the potential uncertainty in workers' compensation law which arises if federal and state courts differ on substantive application of workers' compensation statutes.

Granite's motion for Rule 60(b) relief is granted. The previous orders of this Court are not set aside. Judgment in favor of Granite and against Alea is granted.

November 20, 2006

_____
PETER G. SHERIDAN, U.S.D.J.